# EDWARD WARD, Respondent, v. WILLIAM A. HAREN, Appellant.

### St. Louis Court of Appeals, June 2, 1914.

1. **APPELLATE PRACTICE: Law of Case.** A decision of an appellate court on a question which was fairly presented to the court as necessary to a decision and which was directly considered and decided is the law of the case on a subsequent appeal; but decisions on questions of fact are not conclusive.

2. ———: ———. In an action on a building contract, the owner appealed from a judgment denying him a recovery of damages for failure to complete the building on time, pursuant to a provision of the contract that the contractor should forfeit and pay a stipulated amount for each day's delay in completing the building, beyond a certain time. The theory of the trial court, in rendering this judgment, was that the owner had waived the time clause, so that it was unnecessary for the contractor to raise, or the trial court to consider, the question as to whether the time clause provided for the payment of liquidated damages or the infliction of a penalty. The appellate court determined that the owner had not waived the time clause and reversed the judgment and remanded the cause, the concluding paragraph of the opinion stating that "to the end that a trial may be had with respect to the number of days' delay referred to, the judgment will be reversed and the cause remanded, to be proceeded with in accordance with the views expressed in this opinion." *Held*, that this decision did not determine the question of whether the time clause provided for liquidated damages or a penalty, so as to prevent the trial court from determining that question on a retrial, since that question was not necessary to a decision in the case and was not directly considered and decided; the statement in the opinion that "to the end that a trial may be had with respect to the number of days' delay referred to," not being a direction to the trial court, but being employed merely for the reason that such appeared, on the record then before the court, to be a matter necessitating a new trial.

3. ———: **Directions to Trial Court.** Where a cause is remanded by an appellate court with specific directions, the trial court has no authority to do anything not embraced in such directions.

4. **PLEADING: Right to Amend after Reversal of Judgment.** There is no rule of procedure which cuts off an amendment

to the pleadings, otherwise proper, after the case has been remanded by an appellate court.

5. **APPELLATE PRACTICE: Waiver of Objection to Amendment: Pleading.** The appellate court will not consider the question of whether an amendment to a pleading was properly allowed, where the adverse party did not object to the amendment at the time it was made and the cause proceeded to trial upon the issue raised by it.

6. ———: **Conclusiveness of Findings.** The findings of the trial court on the facts are conclusive on the appellate court, but its findings on the law are not conclusive.

7. ———: **Questions Reviewable: Construction of Contract.** The question of whether a provision in a building contract, that the contractor should forfeit and pay a stipulated amount for each day's delay in completing the building beyond a certain time, provides for a penalty or liquidated damages, is a question of law, and hence the determination of the trial court on it is reviewable on appeal.

8. **DAMAGES: Liquidated Damages or Penalty.** Whether the amount to be forfeited by a contractor under a building contract, providing that he shall forfeit and pay a stiplated amount for each day's delay in completing the building beyond a certain time, is to be regarded as liquidated damages or as a penalty must be gathered from the subject-matter of the contract, the language employed and the intention of the parties.

9. ———: ———: **"Forfeit."** The word "forfeit" in a building contract, providing that the contractor shall forfeit and pay a stipulated amount for each day's delay in completing the building beyond a certain time, is suggestive of a penalty sought to be inflicted, though it is not conclusive.

10. ———: ———: **Contract Construed.** A contract for the construction of a building to be rented for business purposes during an exposition provided that if the building should not be completed at a certain date, fifteen days before the opening of the exposition, and possession thereof delivered to the owner, the contractor should, for each day's delay thereafter, forfeit and pay $120. The building was not completed until three days before the exposition was opened. *Held*, that this stipulation provides for a penalty and not liquidated damages; the parties not contemplating that the owner would suffer any material loss prior to the opening of the exposition. *Held, further,* that the amount provided to be paid in case of default is so grossly disproportionate to the actual damages resulting from the breach as to be unconscionable, and hence it is an unenforcible penalty.

Ward v. Haren.

11. **EQUITY: Relief Against Forfeitures.** Granting relief against a forfeiture is controlled by equitable considerations.

12. **DAMAGES: Liquidated Damages or Penalty.** Where the amount provided by a contract to be paid in case of default is so grossly disproportionate to the actual damages resulting from the breach as to be unconscionable, such stipulation should be held to be an unenforcible penalty.

13. ————: **Liquidated Damages: Prerequisites to Recovery.** Before any liability to pay liquidated damages can attach to the party in default, he must have been guilty of a substantial breach of his agreement, which has resulted in more than mere nominal damage to the other party.

14. ————: ————: ————. Although, in an action to recover liquidated damages for the breach of a contract, the stipulation between the parties becomes the measure of actual damages sustained, where such amount may be properly treated as liquidated damages, nevertheless it is incumbent upon the party seeking to recover to not only show the breach, but that damages have in fact accrued in consequence thereof.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

Affirmed.

*Edw. C. Kehr* for appellant.

(1) Under the opinion and mandate of the Court of Appeals the power and duty of the circuit court upon the retrial of the cause, was limited to finding the number of days after April 15, 1904, that the contractor was in default in the completion and delivery of the building and to give the defendant judgment against the plaintiff on the counterclaim for the number so found at the rate fixed by the contract as liquidated damages. (a) Where a cause is remanded with special directions, the court receiving such directions, is bound to obey them and comply with the mandate. Neither the law or the fact adjudged by the appellate court can be retried below. Pomeroy v. Benton, 77 Mo. 79; Reis v. McDaniel, 131 Mo. 681;

Citizens Nat. Bank v. Donnell, 195 Mo. 564; Viertel v. Viertel, 212 Mo. 562; State ex rel. v. Anthony, 65 Mo. App. 543; Chiles v. School Dist., 111 Mo. App. 52. (b) The decision of this court on the first appeal is the law of the case. Roth Tool Co. v. Spring Co., 146 Mo. App. 1; Ashby v. Gravel Road Co., 111 Mo. App. 80; Lawson v. Spencer, 90 Mo. App. 514; McGrew v. Railroad, 118 Mo. App. 379; May v. Crawford, 150 Mo. 504; Gracey v. St. Louis, 221 Mo. 1; Meriwether v. Publishers, 224 Mo. 617. (2) It was respondent's duty to bring forward on the first trial all defenses which he had to the counterclaim and whether he did or not, all are barred by the decision of the first appeal. Donnell v. Wright, 147 Mo. 639; Summet v. Realty & B. Co., 208 Mo. 501; Spratt v. Early, 199 Mo. 491; Cantwell v. Johnson, 236 Mo. 603; Hines v. Hines, 243 Mo. 495. (3) The court below erred: In failing to strike out plaintiff's amended reply; in failing to observe and carry out the mandate of the appellate court and in proceeding to consider and determine adversely to it matters adjudicated by its opinion and decision; in refusing the instructions asked by appellant and in giving instructions on its own motion which are wholly erroneous. (4) The judgment rendered by the court below is wholly inconsistent with the facts found by it. The court found that the contractor was in default in the completion and delivery of the building for more than twelve days and that the damages are liquidated at $120 per day, and yet refused appellant the judgment to which these facts entitled him and gave him instead a judgment for $1.46 actual damages on his counterclaim. (5) Instead of following the mandate and entering the judgment which the fact found required, the trial court assumed the right to try the whole case anew and on its own motion to put it upon conclusions of fact and law not warranted either by the pleadings or the mandate and in direct conflict with the

opinion and judgment of this court. (6) Liquidated damages when found exclude the consideration and proof of actual damages. Beale v. Hayes, 5 Sandford R. 640-3-4; Sedgwick on Damages (9 Ed.), sec. 426; Sutherland on Damages (3 Ed.), secs. 279 and 283. (7) Failure to make claim under Art. 7, of the contract for an extension of time, forfeits any right on the part of the contractor to an extension. The presen-. tation of such claim is a condition precedent to the right of the contractor to claim such extension. Feeney v. Bardsley, 66 N. J. L. 239; Curry v. Olmstead, 26 R. I. 462; Wagner Co. v. Cawker, 112 Wis. 532; O'Keefe v. St. Francis Church, 59 Conn. 561. (8) The parties having agreed to substitute a tile roof for the corrugated iron roof, the contract thus modified was thereafter the contract between them and the suit must be based and this suit is based on the contract as modified. Lanitz v. King, 93 Mo. 519; Sutter v. Raeder, 149 Mo. 309; Harrington v. Brockman Com. Co., 107 Mo. App. 423.

*Rodgers & Koerner* for respondent.

(1) The circuit court was right in permitting plaintiff to amend his reply and in trying the case upon the new issues presented. The mandate of this court did not preclude plaintiff from interposing additional defenses to the counterclaim. The directions of said mandate, if properly construed, do not preclude such defenses. Had defendant's motion to strike out the defenses to the counterclaim been sustained, plaintiff would have had the right to amend his reply. This right he has never lost. Directions of an appellate court based upon a misapprehension should not be strictly followed so as to work a manifest injustice. Railroad Co. v. Soutter, 69 U. S. (2 Wallace) 510; Building & Loan Assn. v. Anderson et al., 99 Fed. 489. (2) Only those questions which

were directly presented to this court on the former appeal and considered and decided by this court have been adjudicated. Gwin v. Waggoner, 116 Mo. 143; Ables v. Ackley, 133 Mo. App. 594; Baker v. Railroad, 147 Mo. 140; Railroad v. Swan, 120 Mo. 31. (3) This court may examine its previous decision in the same case and on the same issue and reverse it if it is wrong. Gracey v. St. Louis, 221 Mo. 1; Williams v. Butterfield, 214 Mo. 412. (4) Defendant suffered no actual damage—hence, he can recover nothing more than nominal damages. Werner v. Finley, 144 Mo. App. 554; Hathaway v. Lynn, 75 Wis. 186; McCann v. City of Albany, 158 N. Y. 634; Wilgus v. Kling, 87 Ill. 107; McKee v. Rapp, 35 N. Y. Supp. 175; 1 Sedgwick on Damages (9 Ed.), 759, sec. 391. (5) Defendant, by taking possession of the west store of the building on April 18, 1904, waived any claim to liquidated damages he might otherwise have had. 1 Sutherland on Damages (3 Ed.), p. 790, sec. 296; Wyraux v. Grinnell Live Stock Co., 9 Mont. 154; Collier v. Batterton, 87 Tex. 440; Kemble v. Farren, 6 Bingham, 141. (6) No liquidated damages can be recovered after acceptance of part performance. Therefore, in the present case there can be no recovery for the period after April 18, 1904, upon which date defendant took possession of the west store of the building. 1 Sutherland on Damages (3 Ed.), 790, secs. 296, 297; Collier v. Batterton, 87 Tex. 440; Quotation from Pothier in brief in Kemble v. Farren, 6 Bing. 141. (7) Clause 6 of the contract is a stipulation for a penalty and not an agreement for liquidated damages. The word "forfeit" in this clause, although not conclusive, is indicative of the intention of the parties. 1 Sedgwick on Damages (9 Ed.), 786. The stipulated sum is unreasonable and unconscionable and out of all proportion to the injury. 1 Sedgwick on Damages (9 Ed.), secs. 411, 412, 419, 420b; Cochran v. Railroad, 113 Mo. 359; Zimmerman v. Conrad, et al., 74

S. W. 139; McCann v. City of Albany, 158 N. Y. 634. (8) The change in the plans and specifications eliminated the time agreement in Article VI of the contract. Van Buren v. Diggs, 11 How. (U. S.), 461; Palmer v. Stockwell, 9 Gray, 237; Westwood v. Sec'y of State, etc., 11 Weekly Reporter, 261; Dodd v. Churton, 45 Weekly Reporter, 490.

ALLEN, J.—This is the second appearance of this case in this court. The opinion on the former appeal will be found reported in 139 Mo. App. 8, 119 S. W. 446. The action is one for a balance due upon a building contract by which the plaintiff agreed to erect for the defendant a certain temporary building, in the city of St. Louis, in consideration of the sum of $8120, to be paid him by defendant. The contract was entered into on February 23, 1904, and the building was intended to be rented for business purposes during the period of the Louisiana Purchase Exposition, or "World's Fair," held in said city; the lot upon which it was to be located being near the main entrance to said exposition grounds.

The opening of the exposition was on April 30, 1904, and the contract contained a stipulation that if the building was not completed by plaintiff on the 15th day of April, 1904, and the possession thereof delivered to the defendant on said day, then for each and every day thereafter during which the completion thereof should be delayed, the plaintiff should "forfeit and pay" to the defendant the sum of $120 for each and every day that plaintiff remained in default.

During the progress of the work certain changes were made in the plans and specifications, necessitating a longer time for the completion of the work, as well as additional expense on plaintiff's part. The additional compensation to be paid plaintiff was agreed upon; and there is no question here respecting the amount asserted by him to be the balance due upon

the contract. The only controversy in the case is in respect to the defendant's claim to liquidated damages for the period during which the completion of the work was delayed.

The petition avers that the total compensation which plaintiff was entitled to receive was $8821.35; that he had received on account thereof from defendant $6935.76, leaving a balance due of $1885.59, for which he prayed judgment.

The "answer and counterclaim" set up the provisions of the contract relative to a default in the completion of the building by the time specified, and averred that the plaintiff was in default for a period of twelve days in completing the same, and prayed for liquidated damages, under the contract, at the rate of $120 per day, the total of the counterclaim being $1440.

The plaintiff, in his reply, admitted that the building was not completed and delivered to the defendant at the time agreed upon, but averred that said provision in the contract had been waived by reason of the above mentioned changes in or deviations from the original plans and specifications, referring as well to other matter alleged in the petition as excuse for full compliance on plaintiff's part.

Upon the first trial the court below accepted plaintiff's theory that the time clause in the contract had been waived, and denied defendant a recovery on his counterclaim; the latter having theretofore unsuccessfully moved to strike out those portions of plaintiff's reply which set up defendant's alleged waiver of this provision of the contract. When the cause reached this court on the former appeal, the trial court was said to have been in error in holding that the defendant had waived his right to insist upon the enforcement of the time clause in the contract.

As to that question this court, among other things, said: "Plaintiff having failed to request additional

time, he must be deemed to have waived his right thereto and continue his obligation to complete the building within the time originally prescribed. He will not be permitted to claim that his time was extended or waived by the operation of law when he failed to abide the obligation of his contract and present his claim for consideration at the time required."

Respondent vigorously assails the construction thus placed upon the contract on the former appeal. But that question should not be reopened in this case, for the decision on the former appeal is the law of the case, with respect to such matters as were then before the court and actually adjudicated.

But it may be here said that on the former appeal there was no question in the case as to whether the amount stipulated to be paid by plaintiff in case of default in completing the building, to-wit, $120 a day was to be regarded as liquidated damages or as a penalty. The question had not been raised below, and the case was considered here upon the theory that the amount thus stipulated to be forfeited and paid was conceded to be liquidated damages. [See Ward v. Haren, 139 Mo. App. 11, 119 S. W. 446.]

After the cause was remanded for a new trial, plaintiff, by leave of court, filed an amended reply, the amendment consisting of the addition to the original reply of certain allegations to the effect that the building in question was erected for the purpose of being rented to tenants during the World's Fair period, and that it was only necessary that it be ready for occupancy by April 30, 1904; that the stipulation respecting the said amount per day to be paid by plaintiff in case he were in default in completing the building was intended by the parties "as a penalty only to insure the completion of the building within the time necessary for the purposes for which it was erected; and not as liquidated damages; that the amount of

such penalty was grossly in excess of any damages which could have been sustained by defendant by reason of the failure to complete the building within the time, the amount of such damages being readily ascertainable; that the building "was completed and ready for the occupancy of tenants prior to the opening of said World's Fair and that defendant was not damaged in any amount whatsoever by reason of any failure, if failure there was, on the part of plaintiff to complete said building on April 15, 1904."

Upon the filing of this amended reply, the defendant moved to strike out all thereof, except the matter added by the amendment. This motion the court overruled. And the cause coming on to be heard, a jury having been waived, the court, having heard the evidence, made a special finding of facts, in accordance with the request of plaintiff's counsel, found for plaintiff in the sum of $2753.90, and for the defendant on his counterclaim in the sum of $1.46, entering judgment in favor of plaintiff for $2752.44. From this judgment the defendant prosecutes the present appeal.

The findings of the trial court above referred to are quite lengthy, and it is unnecessary to set them out here in full. Among other things the court found that the building in question was intended for use during the Worlds Fair period, beginning April 30, 1904; and that there was a compelling necessity for having it ready for occupancy, not only on April 30, 1904, "but for a sufficient time prior thereto to enable tenants and owners to make all the preparations necessary for commencing business on that day. The court further found that on March 1, 1904, the defendant entered into a contract with one Vaccarazza, whereby the latter agreed to become defendant's tenant in what is called the east store of said building, and paid defendant the sum of $2500.00 in cash, agreeing to pay in addition thereto twenty per cent of the gross

receipts of his business over and above $10,000.00, during the six months period of the exposition; and that on or about the same day defendant rented the "west store" of said building, the amount of the rental not appearing. The court further found that neither in the defendant's building, nor in any of the buildings in the same locality designed for the same purpose, did any of the tenants and occupants open for business earlier than April 30, 1904. And the court found that the defendant, beginning about March 1, 1904, made efforts to rent the space between the two above-mentioned stores, but was never able to do so, though $40 was paid thereon by a prospective tenant as earnest money, which was forfeited. The court further found that the tenant of one store took possession thereof either on the 18th or 20th of April, 1904, and that the place was open and ready for business on April 30, 1904; and that the tenant of the other store entered into possession thereof on or about April 26, 1904, and that his place was likewise open and ready for business on April 30, 1904. And the court also found that any person who desired to rent the space between such stores on April 15, 1904, had, after that day and before April 30, 1904, "reasonable time and opportunity to occupy said space with the consent of plaintiff and defendant and to make necessary preparations to begin business of the kind and character conducted in that vicinity, on April 30, 1904."

And the court further found that the controlling purpose "moving defendant in requiring the time limit on the construction of the building was to afford his prospective tenants a sufficient opportunity to prepare for business upon the opening day of the World's Fair, and that plaintiff was aware of this fact; that a delay in the building preventing such use and occupation by tenants might prove highly damaging to the defendant, of which fact plaintiff was also aware;" that the uncertainty of obtaining tenants after the opening of the

exposition, the methods adopted in fixing the rental values of such premises, and the fact that the time of rental was limited to a period of six months, all of which was known to plaintiff, made it necessary that the building be completed within the contract time, or thereabout, otherwise serious damage might result to plaintiff in a speculative and uncertain amount.

The court thereupon found that the sum of $120 a day agreed to be paid by plaintiff for the time during which the building remained uncompleted after April 15, 1904, was to be regarded as stipulated or liquidated damages, found that plaintiff had breached his contract, and that in consequence of such breach the defendant was entitled to recover at least nominal damages, but found that the defendant had not suffered any actual damage by reason of such breach, in excess of a mere nominal sum.

And the court held that the defendant, in accepting part performance of the contract upon plaintiff's part, by putting his tenants into possession of the stores at the time aforesaid, and before the completion of the building, waived his right to recover upon his counterclaim, as for liquidated damages.

Learned counsel for appellant asserts that this court, on the former appeal, decided not only that the alterations in the building did not operate as a waiver of the time clause in the contract, since plaintiff did not exercise his right to apply for an extension of time, but that plaintiff was liable to defendant as for liquidated damages, at the rate fixed by the contract, for the period during which plaintiff was in default; that the same is now the law of this case; and that under the opinion and mandate of this court the power and duty of the circuit court upon a retrial was limited merely to ascertaining the number of days during which plaintiff was actually so in default, and to accordingly render judgment for defendant on his counterclaim.

It is true that the decision of this court on the

former appeal is the law of this case. [See May v. Crawford, 150 Mo. 504, 51 S. W. 693; Gracey v. St. Louis, 221 Mo. l. c. 5, 119 S. W. 949; Roth Tool Co. v. Spring Co., 146 Mo. App. l. c. 27, 123 S. W. 513.] But "in order that a decision may operate as an estoppel *on a subsequent appeal of the same case,* the question must have been fairly presented to the court as necessary to a decision in the case and directly considered and decided." [Gwinn v. Waggoner, 116 Mo. l. c. 152, 22 S. W. 710.] [See, also, Baker v. Railroad, 147 Mo. 140, 48 S. W. 838; Chicago, etc., Ry. Co. v. Swan, 120 Mo. 30, 25 S. W. 534.]

As we have indicated above, the question as to whether or not the amount per day provided to be forfeited by plaintiff for delay in completing the building is to be regarded as liquidated damages or as a penalty was not a matter in judgment upon the former appeal. On the contrary, it is specifically stated in the opinion that this matter would not be considered, and this for the reason that no such question was then in the case. It had not been raised below by plaintiff, for the reason that he was then relying upon his defense that the entire time clause in the contract had been waived by the alterations in the building. The latter was the sole question reviewed by this court, and it alone is concluded by the judgment.

It is also true that where a cause is remanded with specific directions, the trial court has no authority to do anything not embraced in such directions. [See Rees v. McDaniel, 131 Mo. 681, 33 S. W. 178; Citizens National Bank v. Donnell, 195 Mo. l. c. 564, 94 S. W. 516; Viertel v. Viertel, 212 Mo. l. c. 562, 111 S. W. 579.] But we think that this rule is not here applicable. The closing paragraph of the opinion on the former appeal is as follows: "To the end that a trial may be had with respect to the number of days' delay referred to, the judgment will be reversed and the cause remanded, to be proceeded with in accordance with

the views expressed in this opinion.'' The cause, as finally disposed of here, was not remanded with specific directions to the lower court, but ''to be proceeded with in accordance with the views'' expressed by this court. An examination of our records discloses that the original order made in the case was one reversing the judgment and remanding the cause, with directions to the trial court to enter judgment for the defendant for the amount of his counterclaim. However, upon respondent's motion, the judgment was modified and the cause remanded as shown above. The language there used, viz., ''to the end that a trial may be had with respect to the number of days' delay referred to,'' was evidently employed for the reason that such appeared to be a matter necessitating a new trial, and not to be disposed of by directions from this court. But the order did not confine the lower court to a mere determination of the number of days' delay involved, and it proceeded to try the case anew upon the issues then presented by the pleadings, including the amended reply. And if, upon a new trial, other facts properly came into the case, we ought not to be precluded from considering the case upon its merits, with reference to the facts diclosed by the record on the second appeal. The propriety of permitting the reply to be amended will be touched upon later; but under the issues upon which the case was tried anew, the facts presented by this record differ considerably from those appearing on the former appeal. And, as said in May v. Crawford, supra, l. c. 525, ''as to questions of fact, of course a prior decision of the appellate court is not conclusive, as the law applicable to the facts as presented by the record as it then appeared is all that the appellate court could have decided.''

In this connection it is urged by appellant that it was respondent's duty to bring forward on the first trial all the defenses which he had to the counterclaim, and that whether he did so or not all are barred by

the decision on first appeal, citing: Donnell v. Wright, 147 Mo. 639, 49 S. W. 874; Summet v. Realty & Brokerage Co., 208 Mo. 501, 106 S. W. 614; Spratt v. Early, 199 Mo. 491, 97 S. W. 925; Cantwell v. Johnson, 236 Mo. 575, 139 S. W. 365; Hines v. Hines, 243 Mo. l. c. 495, 147 S. W. 774. These, however, are not cases treating of this matter upon a second appeal in the same case, but deal with the question of what may be raised in a subsequent action, where a final judgment in a former case is pleaded in bar. But see Carp v. Insurance Co., 116 Mo. App. 528, 92 S. W. 1137.

Respondent argues, in this connection, that when the lower court, prior to the first trial, overruled appellant's motion to strike out parts of the reply, thereby in effect holding that the reply stated a good defense to the counterclaim, in that it averred that defendant had waived the time clause in the contract, it was then unnecessary for the plaintiff to interpose another defense, for the reason that the time clause was in effect eliminated from the contract, whereby all matters relating to its construction or breach were likewise eliminated; and that when the view of the trial court was held to be erroneous on appeal, the plaintiff should not be precluded from asserting a meritorious defense which might have been interposed at the first trial had it not been inconsequential in view of the court's rulings. But we think that this question is one not calling for determination, in the state of the record before us. So far as concerns plaintiff's right to amend his reply, after the remanding of the cause, this court has said: "There is no rule of procedure which cuts off an amendment to the pleadings, otherwise proper, after the cause has been remanded by an appellate court. It is the constant practice to allow such amendments, and an amendment restoring an abandoned count in the petition was recommended by this court in the case of Grant v. Reinhart, 33 Mo. App. 74." [Sheehan, etc., Transportation Co. v. Sims, 36 Mo. App.

l. c. 229.] And whether the amendment in this case was "otherwise proper" we think is not before us, for the reason that no point was made below respecting the propriety of such amendment. On the contrary, the defendant moved to strike out all of the amended reply except the matter added by the amendment. No attack was made upon the latter, and the cause proceeded to trial the second time upon the issues thus made. We think therefore that we should take the case as it reaches us, and consider it in the light of all the facts presented by this record.

We are, therefore, of the opinion that the question as to whether the contract provides for liquidated damages or a penalty is a matter to be determined on this appeal, in the light of the facts disclosed by the record before us. The trial court, as we have said, was of the opinion that the clause in question provided for liquidated damages, but that defendant had nevertheless waived his right to demand more than nominal damages. And in support of its conclusions of law the court cited the following authorities, viz: 1 Sutherland on Damages, Sec. 596, and cases cited in footnote, including: Wyraux v. Grinnell Live Stock Co., 9 Mont. 154; Collier v. Batterson, 87 Texas, 440; Kemble v. Farran, 6 Bingham 141—adding a quotation from Pothier found in a brief submitted to Lord Eldon in Kemble v. Farran, supra, as follows: "I cannot receive the whole of a penalty and enjoy any part of the benefit of my right of servitude; I cannot at the same time have the one and the other."

But we think that we need not enter into a discussion of the question of waiver treated by the court, for the reason that, with all due respect to the opinion of the learned trial judge, we are persuaded that the provision of the contract in question should be construed as providing a penalty, rather than an agreement for liquidated damages.

This is a question of law for our review (May v. Crawford, supra, 1. c. 530), though the findings of the trial court respecting the facts are conclusive upon us. The court, among other things, found that the defendant in fact sustained no actual damages. And though the court found that the time clause in the contract was placed therein for the reason that there was a compelling necessity for the completion of the building on or shortly prior to April 30, 1904, and that a failure in this respect might result in a serious damage to defendant, nevertheless it does not appear that the parties contemplated that any serious loss or damage would accrue to the defendant by a failure to complete the building by April 15, provided it was completed in time to permit prospective tenants thereof to enter into possession in time to prepare for the opening of the Exposition on April 30. It appears that it was not intended that the building be put to any use prior to April 30, except such as to enable the tenants to enter and prepare to open for business on the latter date, there being no demand for such a building for business or other purposes prior to the opening of the Exposition. The defendant avers that the building was completed twelve days after April 15; and the court specifically found that it was completed in time for the tenants to enter into possession of their respective quarters and prepare for business on April 30, and that the defendant suffered no damages whatsoever by reason of the twelve days' delay.

It thus appears that the provision for a forfeiture of $120 per day for delay in the completion of the building cannot be considered as stipulating the actual damages which defendant would be expected to suffer by reason of such delay from and after April 15, for it was not contemplated that he would suffer any material loss prior to about April 30th.

In such cases it is said that whether the amount per day to be forfeited is to be regarded as liquidated

damages, or as a penalty, must be gathered from the subject-matter of the contract, the language employed, and the intention of the parties. [See Cochran v. Ry. Co., 113 Mo. 362, 21 S. W. 6.] In the instant case the word "forfeit" is suggestive of penalty sought to be inflicted (See Sutherland on Damages, pp. 771, 772), though this is not conclusive. And in view of the subject-matter of the contract and the evident intention of the parties, as appears from the instrument itself when construed in the light of the attendant circumstances, it seems that the stipulation in question should be held to be in the nature of a penalty for the faithful performance of plaintiff's agreement, and not as intended for the purpose of fixing in advance the damages which would accrue to defendant by a breach thereof.

But regardless of the construction which might otherwise be placed upon this clause of the contract, we think that the amount provided to be paid in case of default is so grossly disproportionate to the actual damage resulting from the breach as to be unconscionable; and that therefore the stipulation should be held to be an unenforcible penalty. This is a matter controlled by equitable considerations, and courts of law exercise equitable powers in relieving against forfeitures. Respecting this matter it is said:

"To be potential and controlling that a stated sum is liquidated damage, that sum must be fixed as the basis of compensation and substantially limited to it; for just compensation is recognized as the universal measure of damages not punitory. Parties may liquidate the amount by previous agreement. But when a stipulated sum is evidently not based on that principle, the intention to liquidate will either be found not to exist or will be disregarded and the sum treated as a penalty. . . . The intention in all such cases is material; but to prevent a stated sum from being treated as a penalty the intention should be apparent to liquidated dam-

ages in the sense of making just compensation; it is not enough that the parties express the intention that the stated sum shall be paid in case of a violation of the contract. . . . The evidence of an intention to measure the damage, therefore, is seldom satisfactory when the amount stated varies materially from a just estimate of the actual loss finally sustained.'' [1 Sutherland on Damages (3 Ed.), Sec. 283, pp. 722-730.]

In Basye v. Ambrose, 28 Mo. 31, it is said by SCOTT, J.: ''They mistake the object and temper of our system of jurisprudence, who, while maintaining that men in making all contracts have a right to stipulate for liquidated damages regardless of the disproportion to the sum resulting from a breach of the contract, insist that it would be hard if men were not permitted to make their own bargains. . . . It has been remarked that in reason, in conscience, in natural equity, there is no ground to say, because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act), that if he omits to do the act he shall suffer an enormous loss, wholly disproportionate to the injury to the other party.''

In the instant case it appears, and so the court found, that defendant actually suffered no pecuniary loss whatsoever by reason of the twelve days' delay which occurred. Nevertheless, he seeks to hold the plaintiff to the forfeiture sought to be imposed by the contract, and to withhold from the latter $1440 of the contract price as for a violation of the terms of his agreement. To this we cannot lend our sanction. And our position is well supported by the decisions of the courts of this State, as well as by those of other jurisdictions. [See Cochran v. Railway Co., supra; Thompson v. St. Charles County, 227 Mo. 220, 126 S. W. 1044; Buchanan v. Exposition Co., 245 Mo. 337, 149 S. W. 26, and authorities to which these cases refer.]

And furthermore, even though the contract be construed as providing for liquidated damages, where no damages whatsoever have been sustained by the breach we do not see how there could be a recovery of anything more than nominal damages. In Werner v. Finley, 144 Mo. l. c. 561, 129 S. W. 73, it is said: "The law undoubtedly is that before any liability to pay liquidated damages can attach to the party in default, he must have been guilty of a substantial breach of his agreement, a breach which has resulted in more than mere nominal damage to the other party. 'This rule is so manifestly just that no discussion of it is necessary.' [Hathaway v. Linn, 6 L. R. A. 553.]" [See, also, McKee v. Rapp, 35 N. Y. Supp. 175; McCann v. City of Albany, 158 N. Y. Supp. 634; Wilgus v. Klinge, 87 Ill. 107; 1 Sedgwick on Damages (9 Ed.), p. 759.]

And this furnishes an additional reason why we should consider the whole case upon its merits, as it appears before us in the record, regardless of the question of penalty or liquidated damages. While it is true that in an action to recover liquidated damages, where the amount stipulated in the contract may be properly treated as such, the stipulation between the parties becomes the measure of the actual damages sustained, nevertheless it is incumbent upon the party seeking to recover for such breach of the contract to show not only the breach, but that damages have in fact accrued in consequence thereof. Having shown the breach, and that substantial damage has resulted therefrom, the stipulation in the contract, in a proper case, will then come to his aid to determine the amount of his recovery, which otherwise might be uncertain and difficult of proof. But it must be made to appear that he has sustained some damage.

In the instant case it was incumbent upon defendant to show that he had suffered some actual damage in order to entitle him to recover upon his counter-

claim. In this he failed. And it will not do to say that the stipulation in the contract furnishes the measure of the damages, when in fact none were entailed by the breach.

We are of the opinion that the judgment below should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.

